**Janet FRITSCH, et al., Petitioners,**

**v.**

**INTERSTATE COMMERCE COMMISSION and United States of America, Respondents,**

**Monroe County, a Legal Subdivision of the State of Indiana, et al., Intervenors.**

No. 94–1403.

United States Court of Appeals, District of Columbia Circuit.

Argued May 11, 1995.

Decided July 18, 1995.

Rehearing and Suggestion for Rehearing In Banc Denied Sept. 18, 1995.

Nels J. Ackerson argued the cause and filed the briefs, Washington, DC, for petitioners. M. Roy Goldberg entered an appearance.

Evelyn G. Kitay, Atty., I.C.C., argued the cause for respondents. Henri F. Rush, General Counsel, Louis Mackall, V, Atty., and Jeffrey P. Kehne, Atty., U.S. Dept. of Justice, were on the brief for respondents. J. Carol Williams, Atty., U.S. Dept. of Justice, entered an appearance for respondents.

Charles H. Montange argued the cause, Washington, DC, for intervenors and amicus curiae. With him on the joint brief was Charles M. Rosenberger for intervenor CSX Transportation, Inc., and Andrea Ferster for amicus curiae Rails to Trails Conservancy.

Before SILBERMAN, SENTELLE, and HENDERSON, Circuit Judges.

Opinion for the Court filed by Circuit Judge SENTELLE.

SENTELLE, Circuit Judge:

Petitioners are various private landowners who own in fee simple the land across which CSX Transportation, Inc. ("CSX") possessed an easement for rail purposes. Petitioners challenge a decision of the Interstate Commerce Commission ("ICC" or "Commission") holding that CSX was legally unable to fully abandon its rail line until expiration of a 180–day public use condition attached to the Commission's decision authorizing abandonment, pursuant to 49 U.S.C. § 10906 (1994). During this 180–day period, CSX and the Monroe County Parks and Recreation Department ("MCPRD") had reached an agreement where the MCPRD would acquire a portion of the rail corridor for trail use under the National Trails System Act, 16 U.S.C. § 1241 *et seq.* (1994). The Commission claimed that because CSX was unable to abandon the rail line during that period, the Commission retained jurisdiction to implement the Trails Act, and that as a result, petitioners' reversionary interest could not vest. We hold that section 10906 did not prevent CSX from consummating abandonment, and thus the Commission retained no jurisdiction to implement the Trails Act.

## I. BACKGROUND

On January 25, 1993, CSX filed a Notice of Exemption with the ICC, seeking authorization to abandon a rail line that it once had operated between Bloomington and Bedford, Indiana. The rail line had been out of service since 1987. The proposed consummation date of the abandonment was March 19, 1993. On February 1, 1993, pursuant to 49 U.S.C. § 10906, the MCPRD filed a request with the ICC for a public use condition to give it additional time to negotiate for acquisition of the rail line for trail purposes. Section 10906 imposes a waiting period on the railroad, preventing it from selling or otherwise disposing of its private property while offers are made to the railroad by those interested in making public use of the property. *Id.* The MCPRD also notified the ICC of its intention to file a statement of willingness to assume financial responsibility, as required by section 1247 of the Trails Act, 16 U.S.C. § 1247. In accordance with the

ICC's procedures under 49 C.F.R. § 1152.50 (1994), the Commission served a notice of exemption authorizing abandonment on February 16, 1993, effective 30 days later. The exemption provided that "[e]nvironmental, historic preservation, public use, or trail use/rail banking conditions will be imposed, where appropriate, in a subsequent decision."

On March 5, 1993, CSX requested additional time to determine whether it would negotiate a trails-use agreement in light of the substantial number of letters it received both for and against the trail. Local landowners opposing the conversion of the rail line to trail use wrote the ICC, enclosing copies of the deeds to their land and asserting CSX did not own the land in fee simple, but rather only possessed easements over the land for purposes of the rail line. Proponents of the conversion also wrote the ICC, maintaining that the imposition of a public use condition under section 10906 would prevent the extinguishment of the easements under Indiana law. On March 16, 1993, CSX informed the Commission it had decided not to negotiate an agreement for conversion.

On March 18, the Commission issued a decision permitting the abandonment, while denying the MCPRD's request for interim trail use under section 1247 because the railroad did not consent, as was required under the statute. However, the Commission did impose a public use condition under section 10906, purporting to stay the disposition of the property for 180 days as an alternative to a section 1247 rails-to-trails conversion. The Commission imposed this condition in an attempt to allow MCPRD and CSX time to negotiate the issue of conversion.

By letter dated March 23, CSX wrote to the ICC that it had abandoned the line on March 19. On April 23, 1993, CSX wrote to the ICC again, emphasizing the legal need for CSX's consent to a rails-to-trails conversion. CSX also repeated that it had abandoned the line on March 19.

On September 10, 1993, MCPRD wrote to the ICC, stating that CSX and MCPRD had reached an agreement to the effect that MCPRD would acquire a portion of the rail corridor for trail use.[1] On September 14, the day the public use condition expired, CSX filed a motion confirming MCPRD's position, and asked the Commission to reopen the abandonment proceeding to issue a Notice of Interim Trail Use under the Trails Act, 16 U.S.C. § 1247(d). CSX also reaffirmed that it had abandoned the rail line on March 19.

The Commission issued a decision on September 23, 1993, agreeing to reopen the proceeding, and imposing the condition for interim trail use. The Commission explained that:

> [CSX] legally could not fully abandon the line until expiration of the 180–day public use condition and the [CSX] March 29 letter-filing was, in effect, notification that it had discontinued operations.... As there is no evidence in the record of any intent to consummate full abandonment, the Commission retains jurisdiction to implement the Trails Act as requested by [CSX] and MCPRD.

On November 8, 1993, petitioner landowners filed a motion to reconsider the Commission's decision, which they supplemented on December 8. Petitioners argued that CSX abandoned its common carrier obligations on March 19, 1993, by virtue of filing a letter with the Commission, discontinuing rail service, and removing all track materials and communication equipment. Consequently, the Commission no longer possessed jurisdiction to impose a trail condition.

The Commission issued its decision on March 22, 1994, denying reconsideration and affirming its prior decision that it retained jurisdiction to impose a trails-use condition. Petitioners subsequently filed a petition for review of this denial of reconsideration with this court on May 19, 1994.

## II.  DISCUSSION

■ As a threshold issue, the intervenors [2] argue we lack jurisdiction to review this petition for review. Under 28 U.S.C. § 2344 (1994), a party seeking to challenge a final

---

1. CSX received $90,000.00 for its change of heart.

2. The intervenors include, among others, CSX and MCPRD on behalf of the ICC.

ICC order must file a petition for review within 60 days of entry of that order. The petition before us, filed May 19, 1994, is thus untimely for purposes of judicial review of the September 1993 Commission decision. On November 8, 1993, however, petitioners filed a "Motion to Reconsider Decision and Notice of Interim Trail Use and Abandonment." The Commission denied this motion in a decision served March 22, 1994. This petition for review is directed at that decision.

The Commission has established procedures for timely reconsideration of decisions in rail abandonment proceedings. Under 49 C.F.R. § 1115.3(e), a party has twenty days from the service date of a decision to seek reconsideration. The Commission also has discretion under section 1115.3(e) to extend the twenty day period an additional twenty days. In the proceedings below, petitioners did not seek reconsideration within the twenty-day period nor the additional twenty-day discretionary period. On November 8, petitioners did file what they termed a motion for reconsideration. However, this was clearly outside the time established under the regulations. Consequently, according to the intervenors, this motion amounted to a motion to reopen an administratively final decision.

The intervenors assert that this court's jurisdiction to review agency refusals to reopen administratively final decisions is limited by *ICC v. Brotherhood of Locomotive Eng'rs*, 482 U.S. 270, 107 S.Ct. 2360, 96 L.Ed.2d 222 (1987). They contend that, under *Locomotive Engineers*, petitions for review of final agency action cannot circumvent the sixty-day limitation by filing a motion to reopen, and then petitioning for review of the motion's denial. They maintain that, under *Locomotive Engineers*, judicial review of the merits of the original agency action is not available where agency reconsideration was sought solely for material error. *See Locomotive Engineers*, 482 U.S. at 281–82, 107 S.Ct. at 2367–68. Courts may only review a refusal to reopen if a party sought reopening on the basis of new evidence or changed circumstances. *Id.* at 284, 107 S.Ct. at 2368–69.

Intervenors posit that the motion to reopen filed below presented no changed circumstances or new evidence not known or available when the September, 1993 decision was issued. Petitioners' motion for reconsideration alleged only that the ICC erred in finding that it had jurisdiction to impose a trails condition. According to intervenors, the Commission had already addressed all issues presented by petitioners in its September decision.

While we agree that, under *Locomotive Engineers*, a refusal to reopen a proceeding for material error will not support a petition to review the merits of the original agency decision, we conclude that the Commission was in fact presented with new material accompanying the motion to reopen.[3] Specifically, petitioners asserted before the Commission that they were denied the opportunity to submit protests, arguing that CSX's request to reopen the proceeding was made beyond the Commission's procedural deadlines to file protests, and that petitioners were unaware of the filing of the CSX motion. Not only did the Commission not reject petitioners' assertions of new matter, it in fact addressed anew the merits of the September 23 determination as though accepting the facial validity of petitioners' claims and rejecting them only on the underlying merits. While it is true that the Supreme Court held in *Locomotive Engineers* that the bare fact that "the Commission's order refusing reconsideration discussed the merits of the [movants'] claims at length," does not render a denial of reconsideration reviewable on the merits of the underlying decision, 482 U.S. at 280, 107 S.Ct. at 2367, it is also true that *Locomotive Engineers* recognized the reviewability of "refusals 'based upon new evidence or changed circumstances' rather than upon 'material error.'" *Id.* at 281, 107 S.Ct. at 2367 (citation to concurrence omitted).

---

3. Intervenors make much of the distinction between motions for reconsideration and motions to reopen administratively final decisions. How-

ever, the Supreme Court in *Locomotive Engineers* did not base its holding on any such distinction, and thus, neither do we.

■ We therefore interpret *Locomotive Engineers* as permitting merits review of a refusal to reopen where the motion to reopen was based on non-pretextual grounds of new matter or changed circumstances, and not merely on material error in the original agency decision. We do not read *Locomotive Engineers* to hold or imply the absolute bar suggested by intervenors. If there were such an absolute bar, one can conceive of a whole parade of horribles headed by a circumstance in which a party totally deprived of due process in an original agency petition could never obtain review of the merits although he never learned, actively or constructively, of the proceedings to deprive him of his rights until after the expiration of the sixty-day review period. Although the question may be a close one, we conclude that the present petition falls in the reviewable new-matter category rather than in the non-reviewable material-error category.

■ Turning to the merits, the ICC argues that the imposition of a public use condition pursuant to section 10906 prevents a railroad, which has received a decision authorizing abandonment, from abandoning a line for 180 days. Specifically, the ICC maintains that CSX was unable to abandon its line for 180 days, beginning March 18, 1993, the date the ICC imposed the public use condition at issue. As a result, CSX's property rights could not revert to the private landowners who own the land across which the rail line was built during that period. Thus, regardless of CSX's actual intent to abandon the line on March 19, 1993, CSX was legally bound to wait the full 180 days. The ICC contends that because CSX reached an agreement with Monroe County within the 180-day period concerning the conversion of part of the rail line for trail use, CSX reversed its prior intent to abandon the line. Consequently, the ICC could legally reopen the proceedings and issue a notice of interim trail use under Trails Act section 1247(d), 16 U.S.C. § 1247(d).

We reject the ICC's application of section 10906, and hold that the imposition of a public use condition did not prevent CSX from fully abandoning the rail line on March 19, 1993. Section 10906, titled "Offering abandoned rail properties for sale for public purposes," states:

> When the Interstate Commerce Commission finds under section 10903 of this title that the . . . public convenience and necessity require or permit abandonment or discontinuance, the Commission shall find further whether the rail properties that are involved . . . are suitable for use for public purposes. . . . If the Commission finds [such properties are so suitable], the properties may be sold, leased, exchanged, or otherwise disposed of only under conditions provided in the order of the Commission. *The conditions may include a prohibition on any such disposal for a period of not more than 180 days after the effective date of the order, unless such properties have first been offered, on reasonable terms, for sale for public purposes.*

49 U.S.C. § 10906 (emphasis added).[4] Nothing in this language, explicitly or implicitly, refers to the staying of an abandonment during the 180–day period. This section simply states that pursuant to a 180–day public use condition, an entity cannot dispose of its rail property during the 180–day period unless the entity has first offered the property, upon reasonable terms, for sale for public purposes. Notwithstanding such a sale, the statute prevents the disposition of any assets remaining after abandonment during the 180–day period. However, once a railroad consummates abandonment of a bare easement, the railroad no longer possesses *any* property interests to transfer. Such is the case here, where CSX only possessed an easement on property belonging to private landowners. Once CSX consummated abandonment, CSX's property interests reverted to the landowners. These interests were thus extinguished as a matter of law. Certainly neither section 10906 nor the Trails

---

4. In their brief, petitioners inexplicably rely on an outdated version of this provision enacted in 1976, 49 U.S.C. § 1a(10), and amended to its present form in 1978. While the specific language relied on by petitioners is worded differently than in the current version, the differences in language are irrelevant for the disposition of this case. Nevertheless, we have higher expectations of counsel appearing before us.

Act can create a new property interest if abandonment has already occurred.

■ No doubt exists that abandonment had in fact occurred in this case. No traffic had moved across the rail line since 1987. In January, 1993, CSX filed a notice of exemption with the ICC, asserting "the proposed consummation date of the abandonment is March 19, 1993." On March 23, CSX notified the Commission that it had in fact abandoned the line on March 19, reiterating its position on both April 23 and September 14, 1993. In addition, CSX had removed all track materials as well as signal and communication lines and poles.

The ICC has stated that its jurisdiction over a line terminates when the line is completely abandoned, and "whether a line is fully abandoned is a question of the carrier's intent." *Illinois Cent. Gulf R.R. Co.—Abandonment—in DeWitt and Pratt Counties, IL*, 5 I.C.C.2d 1054, 1061 (1988). In determining intent, the ICC asserted that it looked to whether tariffs had been cancelled and operations had ceased. *Id.* CSX's intent could not have been clearer in this case, based on the letters it sent to the ICC, as well as its removal of equipment.

The ICC maintains, however, that *Illinois Cent. Gulf R.R.* is inapposite because that case involved the dismissal of a petition seeking a trails-use condition when the railroad had already consummated an *unconditioned* grant of abandonment authority issued by the Commission. In contrast, the ICC imposed a public use condition in the decision permitting CSX to abandon the rail line in the case at bar. The ICC relies on *Preseault v. ICC* for the proposition that its jurisdiction over railroad property terminates only when an *unconditioned* abandonment has been consummated. 494 U.S. 1, 5–6 n. 3, 110 S.Ct. 914, 918–19 n. 3, 108 L.Ed.2d 1 (1990).

We disagree. The Supreme Court in *Preseault* only stated that "[o]nce a carrier 'abandons' a rail line pursuant to authority granted by the [ICC], the line is no longer part of the national transportation system, and although the Commission is empowered to impose conditions on abandonments, ... as a general proposition ICC jurisdiction terminates." *Id.* In the present case, the Com-

mission did not impose any condition on the abandonment by CSX as such that would prevent the reversion of the property interest to the petitioners. The only condition in the order reads as follows:

> The exemption is subject to the condition that [CSX] leave intact all bridges, culverts, and similar structures (but not track or track materials) for a period of 180 days unless the property is first offered, on reasonable terms, for sale for public purposes.

Nothing in the condition recites a limitation on the ability of CSX to effect an abandonment. On March 23, when CSX announced by letter to the Commission that it had "abandoned this line of railroad effective March 19, 1993," there was no condition that prevented it from doing so. The Commission offers no other reason why this case falls outside the general rule of terminated jurisdiction stated in *Preseault*. And we hold that it had no jurisdiction to undo the abandonment and impose conditions thereon. Because we so hold, we need not decide whether Indiana State property law would dictate that a change of use in an easement would constitute an additional taking of the property of the fee owner, nor whether such additional taking would be compensable under the Fifth Amendment to the United States Constitution. *See Preseault*, 494 U.S. at 4, 110 S.Ct. at 918 ("[E]ven if the rails-to-trails statute gives rise to a taking, compensation is available to petitioners under the Tucker Act, 28 U.S.C. § 1491(a)(1) (1982 ed.)"). Those questions are left for another day. Sufficient unto this day is the decision that the easement holder had abandoned its interest and the fee owners prevailed.

## III. CONCLUSION

For the foregoing reasons, we conclude that we have jurisdiction to review the ICC's decision. We further conclude that the ICC was without power to undo the abandonment of the CSX line; that the abandonment had worked a reversion of interest to the fee simple; and that the petition for review is

therefore allowed and the decision of the Commission reversed.

*It is so ordered.*