_____

No. 95-3588
_____

Grantwood Village,                    *
                                      *
           Appellant,                 *
                                      *   Appeal from the United States
      v.                              *   District Court for the
                                      *   Eastern  District  of  Missouri.
Missouri Pacific Railroad             *
Company; Gateway Trailnet,            *
Inc.; Grant's Farm Manor, Inc.; *
Union Pacific Railroad Company,       *
                                      *
           Appellees,                 *
_____                 *
                                      *
Rails to Trails Conservancy,          *
                                      *
           Amicus Curiae.             *
                                      _____

           Submitted:  April 10, 1996

                Filed:  September 9, 1996
                       _____

Before BOWMAN, BEAM, and MURPHY, Circuit Judges.
                       _____

BEAM, Circuit Judge.

      This case involves a dispute over the conversion of a railroad right-
of-way into a trail system under the National Trail Systems Act (Trails
Act).  Grantwood Village (the Village) appeals the district court's order[1]
granting summary judgment to the defendants.  For reversal, Grantwood makes
two broad arguments:

_____

      [1]The Honorable Terry I. Adelman, United States Magistrate
Judge for the United States District Court for the Eastern District
of Missouri.  The parties consented to try their case before
Magistrate Adelman pursuant to 28 U.S.C. § 636(c).

(1) the district court did not have jurisdiction over this dispute involving rights to real property under Missouri law; and (2) even if the district court had jurisdiction, Gateway Trailnet, Inc. (Trailnet) does not have a valid interest in the property. We affirm.

## I.    BACKGROUND

The origin of this dispute derives from a letter dated April 6, 1872, in which President Ulysses S. Grant authorized his St. Louis agent, Charles W. Ford, to grant Pacific Railroad Company (Pacific) a right-of-way over his land outside of St. Louis, Missouri. Later in 1872, Pacific constructed its Carondelet Branch across this property. There is no recorded easement or other indicia of title from President Grant to Pacific.

Missouri Pacific Railroad Company (MoPac), Pacific's successor in interest to the right-of-way, provided railroad service to customers on the Carondelet Branch until approximately 1987, at which time the line was used for other types of railroad service. In June 1991, MoPac's parent company, Union Pacific, decided to proceed with abandonment of the Carondelet Branch. Thus, in early 1992, MoPac filed notice with the Interstate Commerce Commission (ICC)[2] pursuant to 49 C.F.R. § 1152.50, seeking exemption from other applicable federal laws governing the procedures for abandonment of any part of a railroad line (set out in 49 U.S.C.A. §§ 10903 & 10904 (West Supp. 1996)). MoPac's request for abandonment and discontinuance of operations over 6.2 miles of the Carondelet Branch included the portion of the right-of-way now in

---

[2]As of January 1996, the ICC was abolished as a separate agency and its functions have been taken over by the Surface Transportation Board (STB) in the Department of Transportation. This administrative change, however, does not affect our analysis in the present case because the applicable laws have also been amended to apply to the STB. Therefore, for ease of reference we continue to refer to the entity as the ICC throughout this opinion.

question.  On February 28, 1992, a Notice of Exemption was served and published in the Federal Register.  This Notice of Exemption was to become effective on March 29, 1992.

Prior to publication of the notice, Trailnet asked the ICC to issue a Notice of Interim Trail Use or Abandonment (NITU) pursuant to ICC regulations (49 C.F.R. § 1152.29) adopted to implement the applicable portion of the Trails Act.  See 16 U.S.C.A. § 1247(d) (West Supp. 1996).  MoPac expressed its willingness to negotiate with Trailnet for interim trail use by filing a letter with the ICC.

On March 25, 1992, the ICC issued its Decision and NITU (Decision), in which it reopened proceedings and stated that the Notice of Exemption published in the Federal Register on February 28 was modified as necessary to implement interim trail use under the Trails Act.  The ICC further stated in its Decision that interim trail use could be implemented if, within 180 days from the date of service of the Decision, an agreement was reached.  The Decision also provided that if no agreement were reached by that time, MoPac could abandon that line.  Subsequently, the ICC granted two extensions of the 180-day negotiation period at the request of the parties.

On December 30, 1992, one day before time was to expire under the extensions, MoPac and Trailnet entered into a "Donation, Purchase and Sale Agreement" (Agreement) under which MoPac agreed to sell its interest in the property to Trailnet for interim trail use.  MoPac contemporaneously executed and delivered a quitclaim deed to Trailnet.  The Agreement expressly stated that it did not merge into the deed, thereby surviving the closing and transfer of title.  The Agreement also expressly stated that its terms and the transfer were subject to the provisions of the Trails Act and applicable ICC orders.  Upon transfer of the property, MoPac

removed its rails and ties.  Trailnet made improvements and has maintained the property for trail use.

The right-of-way in question is located on real property adjacent to lots in a Village subdivision.  The Village has been using portions of this property as a parkway and bird sanctuary.  The Village originally filed a single-count quiet title action in state court against MoPac and Trailnet. MoPac answered by stating that it no longer had any interest in the property because it had been transferred to Trailnet.  In its first amended petition, the Village sought a declaratory judgment regarding the rights of the parties in the property at issue.  Specifically, the Village requested a declaration that it is the fee simple absolute owner of the real property.  The Village also sought ejectment of Trailnet, Grant's Farm Manor, Inc.,[3] and another party subsequently dismissed from the case. Trailnet had the case removed to federal district court on the basis that the first amended petition includes rights of Trailnet arising under the laws of the United States--i.e., the Trails Act.  The district court denied the Village's motion to remand the case back to state court.

Both Trailnet and the Village filed cross-motions for summary judgment.  The district court denied the Village's motion but granted summary judgment to MoPac and Trailnet.  The court concluded that under Missouri law, Pacific had acquired an easement by estoppel, which had passed to MoPac and eventually to Trailnet.  The court rejected the Village's contention that any right held by MoPac had been abandoned for railroad purposes, holding that the ICC had retained jurisdiction over the right-of-way by authorizing interim trail use and that federal law preempts state law on the question of abandonment.  Finally, the district court concluded

_____

[3]The Village added Grant's Farm Manor, Inc.--the fee title-holder to property south of the disputed railroad right-of-way--as a named defendant in the event that entity could claim some interest in the property at issue.

-4-

that it lacked jurisdiction to review an ICC order. The Village now appeals to this court.

On appeal, the Village asserts that federal courts lack subject matter jurisdiction to hear this dispute because it involves rights to real property under Missouri law. Thus, according to the Village, this case should be remanded to state court. The Village also argues that Trailnet does not have an interest in the property under Missouri law.

## II. DISCUSSION

We review a grant of summary judgment de novo and apply the same standards as the district court. Allen v. Bridgestone/Firestone, Inc., 81 F.3d 793, 795 (8th Cir. 1996). Summary judgment is appropriate if the pleadings and other evidence "show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed. R. Civ. P. 56(c). We give the nonmoving party the benefit of every inference drawn from the evidence. Reich v. ConAgra, Inc., 987 F.2d 1357, 1359 (8th Cir. 1993).

We are first called upon to determine whether the district court erred in determining that this case was properly removed from state court. We conclude that it did not. Although the Village attempts to characterize this lawsuit as a "quiet title" action, it is in essence a collateral attack on the ICC's order authorizing interim trail use on the right-of-way. Trailnet received MoPac's interest pursuant to a quitclaim deed and Agreement executed in compliance with the ICC's Decision and NITU. Thus, a challenge to Trailnet's interest in the right-of-way necessarily includes a review of the ICC's Decision. Moreover, the Village's attempt to prevent the preservation of the railroad right-of-way necessarily entails a finding that MoPac abandoned the right-of-way at some point in time. Because the ICC has exclusive and plenary authority

to determine whether a rail line has been abandoned, <u>see</u>, <u>e.g.</u>, <u>Chicago & N.W. Transp. v. Kalo Brick & Tile, Co.</u>, 450 U.S. 311, 321 (1981), the question of whether MoPac abandoned the right-of-way necessarily involves federal law.  <u>See</u> <u>id.</u>; <u>see also</u> 28 U.S.C. § 1331.  Therefore, federal jurisdiction is proper and the district court did not err in refusing to remand this case to state court.  <u>See</u> 28 U.S.C. § 1441(b).

Although the district court had general subject matter jurisdiction under 28 U.S.C. § 1331 and a remand to state court was not required, a separate question arises as to whether the district court had jurisdiction to review a lawsuit challenging, in effect, the validity of an ICC order.[4] Pursuant to the Hobbs Act, circuit courts (other than the Federal Circuit) have exclusive jurisdiction over any action to enjoin, suspend, or determine the validity of an ICC order.  28 U.S.C. § 2342(5).  No other court would have jurisdiction to review an ICC decision such as the one in this case.  <u>Glosemeyer v. Missouri-Kansas-Texas R.R.</u>, 879 F.2d 316, 320 (8th Cir. 1989), <u>cert. denied</u>, 494 U.S. 1003 (1990).  Therefore, the district court correctly concluded that it did not have jurisdiction to review the ICC's Decision.

Although the Village could have challenged the ICC's Decision by filing a petition directly in this court, they failed to do so.  The Village's attacks on the ICC's Decision are, therefore, foreclosed because the Village failed to make these arguments to the ICC and failed to file a petition for judicial review within sixty days of the ICC's decision of March 25, 1992, as required by the Hobbs Act.  28 U.S.C. §§ 2341 et seq.; <u>see also</u> 28 U.S.C.

---

[4]Complaints originally filed in state court opposing, either directly or indirectly, the continued use of a railroad right-of-way under the Trails Act are routinely removed to federal court, even though the district court goes on to hold that it lacks jurisdiction to review an ICC order.  <u>See</u>, <u>e.g.</u>, <u>Schneider v. Union Pac. R.R.</u>, 864 F. Supp. 120 (D. Neb. 1994); <u>Victor Oolitic Stone Co. v. CSX Transp., Inc.</u>, 852 F. Supp. 721 (S.D. Ind. 1994).

§ 2321. Therefore, the Village has waived any challenge to the validity of the ICC's order.

Even after reviewing the Village's contentions, we find them to be without merit. The Village contends that neither MoPac nor Trailnet have an interest in the right-of-way. Specifically, the Village asserts that under Missouri law MoPac only had a nontransferable license and that it abandoned this interest when it stopped using the right-of-way.

We turn first to the question of what interest Trailnet has in the Carondelet right-of-way under Missouri law. The Village argues that the right-of-way was only a license and as such it was not transferable to Trailnet. We recognize that state law defines the nature of the property interest. In this case, a railroad used the right-of-way for over one-hundred years, undoubtedly incurring significant expenses in doing so. President Grant's letter clearly gave MoPac's predecessor in interest a right-of-way across his property. If the interest in the right-of-way had been only a personal, nontransferable license, then it is curious how the license passed from the original grantee (Pacific) to its successors in interest. Therefore, we agree with the district court that Trailnet received a valid real estate interest from MoPac under Missouri law. See Allee v. Kirk, 602 S.W.2d 922, 924-25 (Mo. Ct. App. 1980) (citing Sanford v. Kern, 122 S.W. 1051 (Mo. 1909)).

The Village next contends that MoPac abandoned any interest it had in the right-of-way. We are again guided by the principle that the ICC's determination of abandonment is plenary, pervasive, and exclusive of state law. See Colorado v. United States, 271 U.S. 153, 164-65 (1926); Kalo Brick & Tile, 450 U.S. at 323. Therefore, federal law preempts state law on the question of abandonment while the ICC retains jurisdiction over the right-of-way. Accordingly, we must next examine the applicable federal law.

In 1968, Congress enacted the Trails Act in order to establish a national system of nature trails. See Glosemeyer, 879 F.2d at 318. By the early 1970s, Congress had become concerned about the abandonment of railroad rights-of-way. Id. (referring to the Railroad Revitalization and Regulatory Reform Act of 1976, § 809, Pub. L. No. 94-210, Title VIII, 90 Stat. 144 (codified as amended at 49 U.S.C. § 10906)). One of the major impediments to preserving these rights-of-way existed in state property laws which prescribed that once rail service is discontinued after the ICC's approval of abandonment, such easements would automatically expire and the rights-of-way would revert to adjacent property owners. Id. In response to this problem, Congress enacted the Trails Act Amendments of 1983. These amendments included a section that expressly dealt with the question of abandonment. Specifically, this section provides:

> Consistent with the purposes of that Act, and in furtherance of the national policy to preserve established railroad rights-of-way for future reactivation of rail service, to protect rail transportation corridors, and to encourage energy efficient transportation use, in the case of interim use of any established railroad rights-of-way pursuant to donation, transfer, lease, sale, or otherwise in a manner consistent with this chapter, if such interim use is subject to restoration or reconstruction for railroad purposes, such interim use shall not be treated, for purposes of any law or rule of law, as an abandonment of the use of such rights-of-way for railroad purposes.

16 U.S.C.A. § 1247(d) (emphasis added). Congress determined that interim trail use was to be treated like discontinuance rather than as an abandonment. Preseault v. Interstate Commerce Comm'n, 494 U.S. 1, 8 (1990). Therefore, the ICC's authorization of interim trail use in its Decision precludes a finding of abandonment of the right-of-way under state law. See, e.g., Preseault v. Interstate

Commerce Comm'n, 853 F.2d 145, 150 (2d Cir. 1988), aff'd, 494 U.S. 1 (1990).[5]

The Village next argues that MoPac's abandonment predates the Trails Act's application. Even prior to enactment of the Trails Act, the ICC had exclusive jurisdiction to deem a railroad right-of-way abandoned. See, e.g., Colorado, 271 U.S. at 164-65; Kalo Brick & Tile, 450 U.S. at 319-20. State law claims can only be brought after the ICC has authorized an abandonment and after the railroad has consummated that abandonment authorization. See, e.g., Hayfield N. R.R. v. Chicago & N.W. Transp. Co., 467 U.S. 622, 635 (1984).[6] Therefore, MoPac could only have abandoned its right-of-way, even prior to the Trail Act's application, if the ICC made such a determination, which it has not done in this case.

Lastly, the Village attacks the validity of the ICC's Decision on several other grounds. The Village asserts that the Trails Act is inapplicable in this case because the quitclaim deed did not

---

[5]Even if we examine Missouri law, we nevertheless conclude that state law does not mandate a conclusion that the right-of-way has been abandoned. See Kansas City Area Transp. Auth. v. 4550 Main Assocs., Inc., 742 S.W.2d 182, 191 (Mo. Ct. App. 1987), cert. denied, 484 U.S. 1063 (1988). In the present case, the facts indicate that the right-of-way was used for customer service until about 1987, at which time it was used for other types of railroad services until early 1992. This use of the right-of-way contradicts a finding of abandonment, even under state law, prior to 1992 at which time the Trails Act was in effect.

[6]A recent decision by the D.C. Circuit does not affect our analysis. In Fritsch v. Interstate Commerce Comm'n, 59 F.3d 248 (D.C. Cir. 1995), cert. denied, 116 S. Ct. 1262 (1996), the court held that a railroad could abandon its property interest after the ICC issued a decision permitting abandonment but prior to the expiration of a 180-day public use condition under 49 U.S.C. § 10906, thereby ending the ICC's jurisdiction over the property. Unlike the Fritsch case, MoPac did not repeatedly express its clear intent to abandon the right-of-way after the ICC issued its Decision; rather, MoPac expressed willingness to negotiate with Trailnet. Moreover, under the Trails Act, the right-of-way could not have been abandoned during a period of interim use.

expressly reserve a reversionary interest in MoPac.  Moreover, according to the Village, the ICC's Decision is void because the 180-day period lapsed before an agreement was reached between MoPac and Trailnet.  As noted above, these arguments should have been presented to the ICC and in a petition directly to us challenging the ICC's Decision.  Therefore, the Village has waived these arguments.  Nevertheless, the plain language of the Agreement demonstrates that both it and the quitclaim deed were drafted in order to comply with the reversionary interest requirement in the Trails Act.  See 16 U.S.C. § 1247(d).  The ICC, moreover, was free to extend this time period for an agreement as it did in this case.  Therefore, we find these arguments meritless.

## III.  CONCLUSION

For the reasons discussed above we conclude that the district court did not err in granting summary judgment to MoPac and Trailnet. Accordingly, we affirm the district court's order and deny all pending motions.

A true copy.

Attest:

CLERK, U. S. COURT OF APPEALS, EIGHTH CIRCUIT.