**MAGNER–O'HARA SCENIC RAILWAY, A Michigan Co-Partnership Consisting of Joel G. Magner & Joseph M. O'Hara, Petitioners,**

v.

**INTERSTATE COMMERCE COMMISSION, Respondent.**

No. 81–3386.

United States Court of Appeals, Sixth Circuit.

Argued Oct. 5, 1982.

Decided Nov. 10, 1982.

Rehearing Denied Feb. 7, 1983.

---

Joel G. Magner, Joseph M. O'Hara, Magner-O'Hara Scenic Ry., Traverse City, Mich., George F. Bearup, Menmuir, Zimmerman, Rollert & Kuhn, Traverse City, Mich., for petitioners.

Richard A. Allen, I.C.C., Charles A. Stark, John J. Powers III, Kenneth P. Kolson, Dept. of Justice, Washington, D.C., for respondent.

Before KEITH and MERRITT, Circuit Judges, and CELEBREZZE, Senior Circuit Judge.

MERRITT, Circuit Judge.

This appeal is before us on petition to review and set aside the decision of the Interstate Commerce Commission (the Commission) in Finance Docket No. 29161F, *Magner-O'Hara Scenic Railway—Operation—In The State of Michigan,* in which the Commission dismissed Magner-O'Hara Scenic Railway's application for a certificate of public convenience and necessity to operate a scenic passenger railway between

Detroit, Michigan, and Traverse City, Michigan. In that decision, the Commission ruled that it lacked jurisdiction over the operation proposed by petitioner, Magner-O'Hara Scenic Railway (Magner-O'Hara), a Michigan partnership. Because we agree with the Commission's construction of its jurisdictional statute, 49 U.S.C. § 10501, we affirm its decision.

In October 1979, Magner-O'Hara applied pursuant to 49 U.S.C. § 10901 to the Commission for a certificate of public convenience and necessity to operate a scenic passenger railway between Detroit, Michigan, and Traverse City, Michigan, a distance of 262 miles. The application indicated that Magner-O'Hara would own no tracks but would operate over existing track owned by three interstate freight carriers: the Grand Trunk Western Railway from Detroit to Ashley, Michigan; the Ann Arbor Line (presently operated by Michigan Interstate Railway) from Ashley to Thompsonville, Michigan; and the Chesapeake and Ohio Railroad, from Thompsonville to Traverse City, Michigan. Magner-O'Hara proposed to employ its own locomotives, passenger cars and crews. In its return to the Commission's questionnaire, Magna-O'Hara stated that it did not plan to connect its rail passenger service with any other common carrier railroads. While asserting that it had reached a tentative agreement with Ann Arbor for trackage rights, Magner-O'Hara conceded that both Chesapeake and Ohio and Grand Trunk had refused to grant it trackage rights.

Review Board 5[1] rendered the Commission's initial decision in July 1980. The Board found overwhelming evidence of need for Magner-O'Hara's proposed service and that the public convenience and necessity required the scenic railway. Yet the Board concluded that it could not issue Magner-O'Hara a certificate because the partnership did not possess trackage rights agreements with the three interstate railroads whose tracks it intended to use. The Board accordingly dismissed the application, and Magner-O'Hara filed an administrative appeal. In November 1980, the Commission Division 1 denied Magner-O'Hara's appeal, concluding that it could not make the requisite finding that public convenience and necessity warrants the proposed service without first reviewing the necessary trackage rights agreements. Thus, while affirming the Review Board's ultimate decision to dismiss the application, the Commission reversed the Board's finding that the public convenience and necessity warrants the proposed service.

Thereafter, in December 1980, Magner-O'Hara petitioned the entire Commission for administrative review of the Division 1 decision.[2] On May 6, 1981, the Commission unanimously denied the petition for administrative review, but reopened the proceeding on its own initiative because the Commission determined that its prior decisions contained material error. See 49 U.S.C. § 10327(g)(1). The Commission ruled that its two previous decisions had not adequately considered the threshold question of subject matter jurisdiction. The Commission noted that its jurisdiction is defined by 49 U.S.C. § 10501 and held that it lacked jurisdiction under that section because Magner-O'Hara proposed to operate over tracks located entirely within Michigan and would not establish interstate operations by connecting with other carriers. Magner-O'Hara's application thus involved intrastate—not interstate—transportation and

---

1. Under 49 U.S.C. § 10305, the Commission may delegate an initial decision to a panel of Commission employees. This board possesses the same power and authority as the Commission itself.

2. On January 1, 1981, while its petition was pending before the Commission, Magner-O'Hara brought an action in the United States District Court for the Eastern District of Michigan for a writ of mandamus directing the panel

members of Division 1 who had dismissed the application to issue a certificate of public convenience and necessity. *Magner-O'Hara Scenic Railway v. Commissioners Clapp, Alexis, and Gilliam,* No. 81–40021 (E.D.Mich. Feb. 26, 1981). The district judge dismissed the petition for want of jurisdiction, citing 28 U.S.C. § 2321(a), which vests in the court of appeals exclusive jurisdiction over the validity of final orders of the Commission.

had to be dismissed.[3] Magner-O'Hara now petitions this court for review, pursuant to 28 U.S.C. § 2321.

The extent of the Commission's jurisdiction is set out in 49 U.S.C. § 10501(a), which reads in pertinent part:

The Interstate Commerce Commission has jurisdiction over transportation ... by rail carrier ... to the extent such jurisdiction is not limited by subsection (b) of this section or the extent the transportation is in the United States and is between a place on ... a state and a place in another State....

Having established jurisdiction for the Commission, Congress then imposed explicit jurisdictional limits in subsection (b), which states:

The Commission does not have jurisdiction under subsection (a) of this section over ... the transportation of passengers or property ... entirely in a state....

Despite this unambiguous exclusion of jurisdiction over transportation "entirely in a state," petitioner urges that its proposed intrastate passenger railway would be inextricably intertwined with interstate commerce through the use of tracks owned by interstate freight carriers. In considering the application, however, the Commission has concluded that Magna-O'Hara's proposal would not affect interstate activity sufficiently to overcome the bar contained in 49 U.S.C. § 10501(b). As the Supreme Court remarked in *City of Yonkers v. United States,* 320 U.S. 685, 691–92, 64 S.Ct. 327, 330–331, 88 L.Ed. 400 (1944), Congress has entrusted the Commission with the responsibility for deciding whether the Commission has jurisdiction over an application to provide rail service.

■ When the Commission is reviewing decisions on questions of fact, this court must confine itself "to the ultimate ques-

tion as to whether the Commission acted within its power," *ICC v. Union Pacific R.R.,* 222 U.S. 541, 547, 32 S.Ct. 108, 110, 56 L.Ed. 308 (1912); that is, the court should "examine the record with a view to determining whether there was substantial evidence to support the order." *ICC v. Louisville and Nashville R.R.,* 227 U.S. 88, 94, 33 S.Ct. 185, 188, 57 L.Ed. 431 (1918). *See also* K. DAVIS, ADMINISTRATIVE LAW TEXT 525 (3d ed. 1972).

Under the standard delineated in *Alleghany Corp. v. Breswick & Co.,* 353 U.S. 151, 77 S.Ct. 763, 1 L.Ed.2d 726 (1957), the Commission also enjoys considerable discretion in its determination of jurisdictional facts. In *Alleghany,* the Supreme Court considered the validity of an assertion of jurisdiction by the Commission. Upholding the Commission's decision, the Court stated:

In deciding this type of issue, of course, the finding of the Commission that a given transaction does or does not constitute a significant increase in the power of one company over another is not to be overruled so long as 'there is warrant in the record for the judgment of the expert body.' *Rochester Telephone Corp. v. United States,* 307 U.S. 125, 146 [59 S.Ct. 754, 764, 83 L.Ed. 1147] (1939).

353 U.S. at 169, 77 S.Ct. at 773.

■ The same standard applies to a court considering a denial of jurisdiction by the Commission. *See American Train Dispatchers Ass'n v. ICC,* 671 F.2d 580, 583 (D.C.Cir.1982).

The record contains "substantial evidence" from which the Commission could reasonably infer that the Magner-O'Hara project was purely intrastate in nature. *Cf. NLRB v. Columbia Enameling & Stamping Co.,* 306 U.S. 292, 300, 59 S.Ct. 501, 505, 83 L.Ed. 660 (1939); *Consolidated Edison Co.*

---

**3.** In reaching its decision, the Commission was careful to avoid overruling the Division 1 decision. Indeed, as an alternate ground for dismissing the application, the Commission held that Magner-O'Hara's failure to submit trackage rights agreements would have required dismissal regardless of the jurisdictional decision. The Commission argues both grounds for dis-

missal to us on appeal. Because we find that the Commission correctly declined to assert jurisdiction over the application, we need not address the issue whether the Commission may require the submission of trackage rights agreements before it decides the public convenience and necessity question.

*v. NLRB,* 305 U.S. 197, 229, 59 S.Ct. 206, 216, 83 L.Ed. 126 (1938). The 262 miles of proposed scenic railway lie entirely within the state of Michigan. No connectors to any other common carrier railroads are planned. Thus, Magner-O'Hara's own evidentiary submissions clearly support the Commission's conclusion that it lacks jurisdiction over the project.

Petitioner also argues that the Commission has jurisdiction over its proposal pursuant to 49 U.S.C. § 11343(a), which requires that transactions such as the consolidation of at least two carriers and the acquisition by a rail carrier of trackage rights over a second rail carrier receive the Commission's approval. And yet, it appears to be well settled that the Commission cannot force a rail consolidation, *St. Joe Paper Co. v. Atlantic Coast Line R. Co.,* 347 U.S. 298, 305–06, 74 S.Ct. 574, 578–579, 98 L.Ed. 710 (1964); nor can the Commission compel one carrier to grant trackage rights to another, *City of Hialeah, Fla. v. Florida East Coast Ry. Co.,* 317 ICC 34, 36 (1962); *Baltimore & Ohio R. Co. Operation,* 261 ICC 535, 544 (1945).

This aspect of the Commission's jurisdiction remains unchanged by the Staggers Rail Act of 1980, Pub.L. 96–448, 94 Stat. 1895 (October 14, 1980), which authorizes the Commission to resolve disputes between two carriers where one carrier seeks *to cross* the other's tracks. The legislative history reflects a congressional intent to prevent one carrier from blocking the path of another carrier. H.R.Rep. No. 96–1430, 96th Cong. 2d Sess. 115–16, *reprinted in* 1980 U.S. CODE CONG. & AD. NEWS 4147–48. The Act also authorizes the Commission to require that one carrier allow another carrier to use its main line tracks, but only when the Commission detects an emergency situation that would have substantial adverse effects on rail service in a substantial region of the United States. These powers should be exercised only in genuine emergencies. H.R.Rep. No. 96–1430, 96th Cong. 2d Sess. 118–19 *reprinted in* 1980 U.S. CODE CONG. & AD. NEWS 4150–51. The instant case does not present such an emergency, and the Staggers Act does not authorize the Commission to force one carrier to grant trackage rights to a purely intrastate carrier on a sustained basis.

Finally, petitioner contends that the Commission is estopped from concluding that it lacks jurisdiction over Magner-O'Hara's proposed operation. According to petitioner, the rulings of the Review Board and Division 1 should bar the Commission from reopening the case and denying jurisdiction. This argument has no legal basis. The Commission may reverse any subordinate panel's findings if it considers them to contain material error. *See Bowman Transportation, Inc. v. Arkansas-Best Freight System, Inc.,* 419 U.S. 281, 288 n. 4, 95 S.Ct. 438, 443 n. 4, 42 L.Ed.2d 447 (1974). Moreover, the Administrative Procedure Act, 5 U.S.C. § 557(b) explicitly provides an agency reviewing an initial decision with "all the powers which it would have in making the initial decision except as it may limit the issues on notice or by rule."

We hold that the Commission was justified in its conclusion that it lacked jurisdiction over petitioner's application. Accordingly, we decline to set aside the order of the Commission, and we affirm its decision.