132 F.3d 60

**Daryl BECKER, Petitioner,**

v.

**SURFACE TRANSPORTATION BOARD and United States of America, Respondents,**

**T and P Railway, Inc. and American Trails Association, Inc., Intervenors.**

**Nos. 95–1481, 97–1243.**

United States Court of Appeals, District of Columbia Circuit.

Argued Nov. 20, 1997.

Decided Dec. 30, 1997.

Nels J. Ackerson, Washington, DC, argued the cause and filed the briefs for the petitioner. Lynn A. Bulan entered an appearance.

Evelyn G. Kitay, Attorney, Surface Transportation Board, Washington, DC, argued the cause for the respondent, with whom Henri F. Rush, General Counsel, Ellen D. Hanson, Deputy General Counsel, and M. Alice Thurston, Attorney, United States Department of Justice, were on brief. J. Carol Williams and Jeffrey P. Kehne, Attorneys, United States Department of Justice, entered appearances.

Fritz R. Kahn, Washington, DC, was on the brief for intervenors American Trails Association, Inc., et al.

Before: EDWARDS, Chief Judge, HENDERSON and ROGERS, Circuit Judges.

Opinion for the court filed by Circuit Judge HENDERSON.

KAREN LECRAFT HENDERSON, Circuit Judge:

Petitioner Daryl Becker challenges decisions by the Surface Transportation Board (STB, Board) and the Interstate Commerce Commission (ICC, Commission) authorizing conversion of a railroad right-of-way to trail use under the National Trails System Act (Trails Act), 16 U.S.C. §§ 1241 *et seq. See T and P Railway—Abandonment Exemption—in Shawnee, Jefferson and Atchison Counties, KS,* Docket No. AB–381, 1997 WL 68211 (STB Feb. 7, 1997) (JA A302); *T and P Railway—Abandonment Exemption—in Shawnee, Jefferson and Atchison Counties, KS,* 1995 WL 424909 (ICC July 5, 1995) (JA A258).[1] Becker, who claims a reversionary interest in the right-of-way, contends that the Commission lacked jurisdiction to issue a notice of interim trail use (NITU) on March 30, 1994 because the right-of-way was abandoned before that date. We agree that the right-of-way had been abandoned and that the Commission therefore lacked jurisdiction to issue the NITU.[2]

The facts are not in dispute. In 1991 T and P Railway, Inc. (T&P) acquired a 41–mile rail line in Kansas from the Atcheson, Topeka and Santa Fe Railway Co. In September 1992 T&P applied to the ICC for authorization to abandon the line. By decision served April 27, 1993 the ICC granted T&P an abandonment exemption pursuant to then 49 U.S.C. § 10505 (current version at 49 U.S.C. § 10502) and imposed a 180–day public use condition on the proposed abandonment pursuant to 49 U.S.C. § 10906. The decision further directed T&P to notify the Commission within ten days if it was willing to negotiate for interim trail use and rail banking pursuant to the Trails Act, 16 U.S.C. § 1247(d). After receiving an affirmative response, the Commission issued a NITU on May 25, 1993 authorizing T&P to negotiate a trail use agreement with the Kansas Department of Wildlife and Parks during the 180–day public use period. When the Kansas Department of Wildlife and Parks later withdrew, T&P agreed to negotiate with the Kansas Department of Transportation (KDOT) until the end of the 180–day period but refused to extend negotiations beyond that time. Accordingly, the NITU expired on November 27, 1993 with no agreement having been reached. In the meantime T&P had canceled its tariffs and removed all of the rails and ties from the line.

More than three months later, on March 2, 1994, the American Trails Association, Inc. (ATA) filed with the Commission a statement of willingness to assume financial responsibility for interim trail use and rail banking of the right-of-way pursuant to 49 C.F.R. § 1152.29(a). On March 10, 1994 T&P notified the Commission it had negotiated an agreement to sell the right-of-way to ATA and requested that another NITU issue. By decision dated March 30, 1994, the Commission reopened the proceeding, determined it retained jurisdiction because T&P had never

---

1. The ICC Termination Act of 1995, Pub.L. No. 104–88, 109 Stat. 803, abolished the ICC and created the STB to assume many of its functions. The proceeding below spanned the tenure of both bodies.

2. The STB recently amended its regulations to require that railroads desiring to exercise aban-

donment authority "file a notice of consummation with the Board to signify that it has exercised the authority granted and fully abandoned the line." 49 C.F.R. § 1152.29(e)(2). The requirement of written notice of abandonment should eliminate uncertainty over whether a particular line has been abandoned.

consummated abandonment of the right-of-way and issued the requested NITU. On April 14, 1994 ATA and T&P informed the Commission that they had reached an interim trail use/rail banking agreement.

On April 27, 1994 Becker filed a petition to reopen the proceedings, to rescind the March 30, 1994 decision and to dismiss the trail use request for lack of jurisdiction on the ground, *inter alia*, that the right-of-way had been abandoned. The Commission denied the petition on July 5, 1995, again concluding there had been no abandonment. Becker filed a motion for reconsideration on August 8, 1995 and on September 18, 1995 petitioned this court for review of the denial. While the petition was pending the Board denied Becker's motion for reconsideration on February 7, 1997. On April 8, 1997 Becker petitioned this court for review of that denial.

The sole issue before the court is whether the Board and the Commission correctly determined that T&P did not abandon the right-of-way before the March 30, 1994 NITU issued. We conclude that the determinations were unsupported by substantial evidence and that Becker's petition for review of the Board's decision should therefore be granted.

 "In determining whether a railroad has abandoned a line, one must focus on the railroad's objective intent." *Consolidated Rail Corp. v. STB*, 93 F.3d 793, 799 (D.C.Cir. 1996). " 'In determining intent, we look at certain indicia: a line is fully abandoned when a certificate of public convenience and necessity ... is issued and has become effective, tariffs have been canceled and operations have ceased.' " *Black v. ICC*, 762 F.2d 106, 112 (D.C.Cir.1985). *Id.* at 798 (*quoting Iowa Power, Inc.—Construction Exemption—Council Bluffs, IA*, 8 I.C.C.2d 858, 863 (1990)). Each of these indicia is present here. When the NITU expired, T&P had sought and been granted an exemption from the requirement of a certificate of public convenience and necessity, *see* 49 U.S.C. §§ 10505, 10903, had ceased service and had canceled its tariffs. In addition, T&P had taken the further step of removing the rails and ties from the line. *See Consolidated Rail Corp.*, 93 F.3d at 798 ("Conrail had gone

beyond the indicia of intent that the ICC found to be sufficient in *Iowa Power* ... it had ... scheduled the commencement of salvage operations...."). Nevertheless, the Board, relying on *Birt v. STB*, 90 F.3d 580, 585 (D.C.Cir.1996), asserted below that "while discontinued rail service, salvaged track, and tariff cancellation are actions often taken in connection with abandonment, they also are fully consistent with the lesser action of temporary cessation of rail operations or trail use" and "are entitled to little weight where, as here, the railroad's actions demonstrate an intent not to abandon by its continued willingness to negotiate." 1997 WL 68211, at *3 (JA A305). The Board then concluded that "the railroad's expressed desire and intention to continue trail use negotiations beyond the 180–day period shows that in this case, as in *Birt*, there was no intent to fully abandon the line." *Id.* Neither *Birt* nor the record supports the Board's position.

It is true that in *Birt* the court acknowledged that "cessation of operations, cancellation of tariffs, salvage of the track and track materials, and relinquishment of control over the right-of-way ... are equally consistent with temporary cessation of operations ('discontinuance'), which permits a rails-to-trails conversion," as they are with permanent abandonment. 90 F.3d at 585–86. The court then concluded that "to determine whether the railroad's conduct is abandonment or mere discontinuance, we must often look to additional behavior which signifies one or the other." *Id.* at 586. Here, additional behavior signifies abandonment. The sole indication of discontinuance cited by the Board is T&P's "expressed desire and intention to continue trail use negotiations beyond the 180–day period," 1997 WL 68211, at *3 (JA A305). T&P's "expressed" intent, however, was to the contrary. In its reply to KDOT's request to extend the negotiation period, T&P expressed its willingness to accept offers during the remainder of the 180–day period but stated unequivocally that KDOT's extension request had "come[ ] too late" and that T&P was "unprepared to agree to a further

six month extension." JA A212.[3] There is no evidence that T&P intended to negotiate further until its March 10, 1994 notification that it had reached an agreement with ATA. Given T&P's intent to abandon before that time and its expressed opposition to extension of the negotiation period, we must conclude that when the May 1993 NITU expired on November 27, 1993 abandonment was consummated and the Board lost jurisdiction over the line. *See* 49 C.F.R. § 1152.29(d)(1) ("The NITU will permit the railroad to discontinue service, cancel tariffs, and salvage track and materials, consistent with interim trail use and rail banking, 30 days after the date it is issued, and permit the railroad to fully abandon the line if no agreement is reached 180 days after it is issued, subject to appropriate conditions, including labor protection, and environmental matters."); *Preseault v. ICC*, 494 U.S. 1, 5 n. 3, 110 S.Ct. 914, 918 n. 3, 108 L.Ed.2d 1 (1990) ("Once a carrier 'abandons' a rail line pursuant to authority granted by the Interstate Commerce Commission, the line is no longer part of the national transportation system, and although the Commission is empowered to impose conditions on abandonments, *see, e.g.,* 49 U.S.C. §§ 10905(f)(4), 10906 (1982 ed.), as a general proposition ICC jurisdiction terminates.").[4] The Board then was without jurisdiction to issue the second NITU on March 30, 1994.[5]

For the preceding reasons, the petition for review of the Board's February 7, 1997 denial of reconsideration is

*Granted.*

---

**3.** Both the Commission's final decision and the Board's denial of reconsideration ignore these statements.

**4.** We cannot accept the Board's suggestion that T&P's silence indicated intent not to abandon. *See* 1997 WL 68211, at 3. Not only is this view unsupported by precedent or logic—its adoption would permit a railroad to sit on an unused line indefinitely with no indication of its status. The Board's new regulations requiring written notice of consummation avoid this result by providing for automatic expiration of abandonment authority after one year if no notice of consummation has been filed. *See* 49 C.F.R. § 1152.29(e)(2).

**5.** In light of this conclusion we need not address Becker's challenge to the ATA's qualifications or the adequacy of the STB's review of them.