RLTD RAILWAY CORPORATION and Leelanau Trails Associations, Petitioners,

v.

SURFACE TRANSPORTATION BOARD and The United States of America, Respondents,

Leelanau County, a legal subdivision of the State of Michigan; August Sharnowski; Barbara Sharnowski, Landowners in the State of Michigan, Intervenors.

No. 96–4142.

United States Court of Appeals, Sixth Circuit.

Argued Nov. 6, 1998.

Decided Jan. 28, 1999.

Devin S. Schindler (argued), Warner, Norcross & Judd, Grand Rapids, MI, for RLTD Railway Corporation.

Devin S. Schindler (argued), Warner, Norcross & Judd, Grand Rapids, MI; George R. Thompson, John R. VanderVeen (briefed), Thompson & O'Neil, P.C., Traverse City, MI, for Leelanau Trails Associations.

David C. Shilton, M. Alice Thurston (briefed), U.S. Department of Justice, Land & Natural Resources Division, Washington, DC, for United States of America.

Evelyn G. Kitay (argued), Surface Transportation Board, Washington, DC, for Surface Transportation Board.

Lynn A. Bulan, Nels J. Ackerson (argued and briefed), James R. Baarda (briefed), The Ackerson Group, Washington, DC, for Leelanau County, August Sharnowski and Barbara Sharnowski.

Before: KEITH, KENNEDY, and NORRIS, Circuit Judges.

## OPINION

ALAN E. NORRIS, Circuit Judge.

Petitioner RLTD Railway Corporation ("RLTD") filed an application to abandon a segment of its rail line pursuant to 49 C.F.R § 1152.50 and 49 U.S.C. § 10903. Petitioner Leelanau Trails Associations ("LTA") supported this application and submitted its own application for imposition of a "trail condition" under 16 U.S.C. § 1247(d) (allowing rail corridors to be used for commuter and recreational use while keeping them prepared for future rail use). The success of the LTA's application depends upon RLTD's success. The Surface Transportation Board ("STB"), after receiving numerous timely objections to the applications, determined that it did not have jurisdiction to grant the abandonment application. The STB then reconsidered and affirmed its decision. Petitioners appeal the initial decision and its affirmance. This court has jurisdiction pursuant to 28 U.S.C. §§ 2321 and 2342(5) to review final orders of the STB.

## I. BACKGROUND

1. *Statutory background*

This case arises at the intersection of two federal acts, both of which affect the maintenance of the United States rail system. In the Transportation Act of 1920, 41 Stat. 477–478, Congress gave the Interstate Commerce Commission ("ICC") jurisdiction over railroad track abandonments. Pursuant to the ICC Termination Act of 1995, 109 Stat. 803, the ICC ceased to exist. Authority over abandonment applications is now held by the STB. 49 U.S.C. § 10903.

Prior to the enactment of the Transportation Act, state and local authorities constrained railroad companies in their efforts to abandon unprofitable tracks. In giving the ICC/STB authority to grant or deny applications for abandonment, Congress sought to balance the railroad companies' need to dispose of trackage that was no longer profitable with the public's need for a working interstate track system. *See* Steven R. Wild, *A History of Railroad Abandonments*, 23 Transp. L.J. 1, 5 (1995), *Colorado v. United States*, 271 U.S. 153, 168–69, 46 S.Ct. 452, 70 L.Ed. 878 (1926). If a railroad track falls within its jurisdiction, the ICC/STB has exclusive authority to determine whether abandonment will be permitted. *See Chicago & North Western Transportation Co. v. Kalo Brick & Tile Co.*, 450 U.S. 311, 319–21, 101 S.Ct. 1124, 67 L.Ed.2d 258 (1981). The ICC/STB may approve an abandonment after a full administrative proceeding, 49 U.S.C. § 10903(a), or it may authorize abandonment by granting an exemption from the section 10903 process for "out-of-service" rail lines. 49 U.S.C. § 10502 (formerly 49 U.S.C. § 10505); 49 C.F.R. § 1152.50. The ICC/STB loses its jurisdiction over a rail line once the line is abandoned pursuant to an ICC/STB authorization. *See Preseault v. ICC*, 494 U.S. 1, 5–6 n. 3, 110 S.Ct. 914, 108 L.Ed.2d 1 (1990). Actual abandonment pursuant to authorization is known as "consummation." *See* 49 C.F.R. §§ 1152.29(e)(2), 1152.50(e).

The second federal enactment at issue is the National Trails System Act, 16 U.S.C. § 1247, which allows a railroad wish-

ing to cease operations along a stretch of track to negotiate with a state, municipality, or private group concerning the transfer of financial and managerial responsibility for the railroad corridor and the maintenance of the corridor for possible future rail use—called "railbanking". Railbanking is an alternative to abandonment. With railbanking, the railroad maintains ownership of the rail corridor, a third party makes interim use of the rail corridor, and the ICC/STB's jurisdiction over the rail corridor continues. When a track is abandoned, however, ICC/STB jurisdiction ceases, and, in the usual case, reversionary interests in the rail corridor become effective. *See Preseault,* 494 U.S. at 5–7, 110 S.Ct. 914; *Birt v. STB,* 90 F.3d 580, 582–83 (D.C.Cir.1996).

**2. *Proceedings below***

On September 29, 1995, RLTD filed a notice with the ICC for abandonment of a stretch of track. Seeking to avoid an extended administrative process, RLTD filed under the 49 U.S.C. § 10505 (now 49 U.S.C. § 10502) "out-of-service" exemption. On the same day, LTA submitted a statement of willingness to assume managerial and financial responsibility for the track. Matters initially went well for petitioners as the ICC published a notice of exemption and interim trail use [1] in the Federal Register at 60 F.R.

54087 (1995). Both the exemption and the Notice of Interim Trail Use ("NITU") were scheduled to become effective on November 18, 1995, absent a stay for reconsideration.

Subsequently, several parties filed objections to RLTD's abandonment, claiming that the ICC had no jurisdiction over the stretch of track because it had been abandoned much earlier. The ICC stayed the effective date of the exemption and NITU to allow it to examine the jurisdictional issues. In an August 23, 1996, decision (*August Decision*), the STB [2] vacated the notice of exemption, ruling that it did not have jurisdiction over the track in question. Petitioners filed a request for administrative reconsideration by the STB. On October 20, 1997 (*October Decision*), the STB declined to reopen the case and reaffirmed its prior decision.

**3. *History of the track***

This action concerns a stretch of track that runs north-south in Leelanau County, Michigan, from Northport to Suttons Bay, and continues in the same direction from Suttons Bay to Hatch's Crossing. The track then runs southeasterly from Hatch's Crossing to Rennie's Station, and continues in the same direction to Traverse City, where there is a railroad station connecting the track with the interstate system.

| Northport | Suttons Bay | Hatch's Crossing | Rennie's Station | Traverse City |
|---|---|---|---|---|
| \| southerly \| | southerly \| | southeasterly \| | southeasterly \| | |

The stretch from Northport to Hatch's Crossing is known as the "Leelanau Line." From 1920 to 1994, the Leelanau Line was owned by Leelanau Transit Company ("LTC"), a common carrier that merged into RLTD in 1994. The segments between Hatch's Crossing and Traverse City were

once owned by the Chesapeake and Ohio Railway Company ("C & O"). At one time, the C & O leased LTC's line and operated both.

On February 10, 1975, the ICC issued an order and certificate permitting conditional

1. A Notice of Interim Trail Use ("NITU") provides for a 180–day window in which the railroad and the party seeking to assume responsibility for the track may negotiate an agreement for transfer of responsibility. If no agreement is reached within that time, the railroad may fully abandon the line. If an agreement is reached, a "Certificate of Interim Trail Use" ("CITU") issues. *See* 49 C.F.R. 1152.29(d).

2. After petitioners filed their applications for abandonment and interim use, but before the *August Decision,* the ICC Termination Act went into effect. Section 204(b)(1) of the Act provides that proceedings initiated in the ICC shall continue before the STB.

abandonment by the C & O and LTC of their lines and operations, except for the short stretch of track between Traverse City and Rennie's Station. *See The Chesapeake & Ohio Ry. Co. Abandonment—Between Hatch's Crossing and Northport, Leelanau County, Mich.*, 348 I.C.C. 343 (1975). Each railroad's abandonment was subject to the condition that each send a letter asserting that it had abandoned. After a stay of the effectiveness of the order, on March 1, 1978, the ICC lifted the stay. The conditions again came into effect, giving the railroads until March 1, 1979, to fulfill the conditions. The LTC requested a six-month extension of time to consummate, which was granted, giving it until August 1, 1979. The C & O sent a letter to the Commission, exercising its authority to abandon. The LTC sent no such letter. Subsequent to the C & O's abandonment, the LTC purchased the segment between Rennie's Station and Hatch's Crossing.

On September 29, 1980, the C & O filed another application to abandon a long stretch of track which extended north to include the segment from Traverse City to Rennie's Station, and the ICC authorized abandonment on June 12, 1981. The C & O then consummated the abandonment, leaving the LTC with no working connection to the interstate rail system.

From May 1, 1991, until October 24, 1993, LTC's track was operated as a scenic tourist railroad under a lease to the Leelanau Scenic Railroad Company. This seems to be the only rail use of the line since the C & O abandoned the Traverse City–Rennie's Station segment in 1981. In March of 1994, LTC merged into the Leelanau Transit Holding Company, which then merged into RLTD. In the same month, RLTD sold the section of track north of Suttons Bay to the Grand Traverse Band of Ottawa & Chippewa, and it contracted to sell the remaining southern portion of its track to petitioner LTA. The line from Northport to Suttons Bay has been salvaged, and portions of the southern end of the track have been paved over.

This action arises from the RLTD's application to abandon the Leelanau Line. Dependent upon a successful abandonment is the LTA's application to railbank the stretch of track from Hatch's Crossing to Suttons Bay.[3]

## II. DISCUSSION

In its *August Decision* the STB ruled that it no longer had authority over the Leelanau Line because that track had been abandoned when the LTC consummated an authorized abandonment of the line in the late 1970's. Yet in its *October Decision,* after being confronted with additional evidence brought forth by petitioners that the LTC never consummated an authorized abandonment, the STB ruled that there had been a *de facto,* as well as a *de jure,* abandonment of the Leelanau Line. While a *de jure* abandonment occurs where a railroad company consummates an authorized abandonment, here a *de facto* abandonment occurred because the line was no longer "linked to and part of the interstate rail system." *October Decision* at 6. Because we agree with the STB that it lost jurisdiction over the line through a *de facto* abandonment, we do not address whether the facts support the STB's ruling that there had been a *de jure* abandonment.

■■■ The STB "enjoys considerable discretion in its determination of jurisdictional facts." *Magner–O'Hara Scenic Ry. v. ICC,* 692 F.2d 441, 444 (6th Cir.1982). A reviewing court should sustain the judgment of the STB so long as there is " 'substantial evidence to support the order.' " *Id.* (quoting *ICC v. Louisville and Nashville R.R.,* 227 U.S. 88, 94, 33 S.Ct. 185, 57 L.Ed. 431 (1913)). This court "must give considerable weight and due deference to the [STB's] interpretation of the statutes it administers unless its statutory construction is plainly unreasonable." *Brotherhood of Locomotive*

---

**3.** The RLTD's application includes the track from Suttons Bay to Northport, even though the RLTD has already sold this track to the Grand Traverse Band of Ottawa & Chippewa. This sale was made without ICC approval, which would have been required if the line was still active. *See* *October Decision* at 5. RLTD does not seek to abandon the track between Hatch's Crossing and Rennie's Station, apparently because that segment was abandoned by the C & O before the LTC bought it.

*Eng'rs v. ICC*, 909 F.2d 909, 912 (6th Cir. 1990).

■ The STB and petitioners dispute whether the STB loses jurisdiction over a stretch of track once it becomes severed from interstate commerce. The STB relies heavily upon *Magner–O'Hara* where this court sustained an ICC ruling that it did not have jurisdiction over an application to operate a scenic passenger railway. The ICC found that the railway would operate entirely within Michigan and would not sufficiently affect interstate commerce to bring it within its jurisdiction. *See Magner–O'Hara,* 692 F.2d at 445. This court based its affirmance upon 49 U.S.C. § 10501(b), which, at that time, expressly excluded from ICC jurisdiction "the transportation of passengers or property ... entirely in a state." *Id.* While 49 U.S.C. § 10501 has since been amended, and the express exclusion eliminated, the statute still does not provide for jurisdiction over completely intrastate tracks. The statute provides for jurisdiction when the "transportation ... [is] between a place in ... a State and a place in the same or another State as part of the interstate rail network." 49 U.S.C. § 10501(a)(2)(A). Here, according to the STB, the Leelanau Line is not part of an interstate rail network.

■ Petitioners argue that if it is the case that rail lines severed from the interstate rail network are out of the jurisdiction of the STB, then a railroad company could bypass the abandonment procedures of 49 U.S.C. § 10903 by physically severing its line from the interstate system, or taking other action which severs it from the interstate rail network. However, this obviously unintended result is avoided by the fact that the STB's power "extends even to approval of abandonment of purely local lines operated by regulated carriers when, in the Commission's judgment, 'the over-riding interests of interstate commerce requir[e] it.' " *Kalo Brick & Tile,* 450 U.S. at 320, 101 S.Ct. 1124 (quoting *Palmer v. Massachusetts,* 308 U.S. 79, 85, 60 S.Ct. 34, 84 L.Ed. 93 (1939)). Here, the RLTD is not an interstate carrier—it has yet to carry anything at all—and clearly the STB has not found it in the "over-riding interests of interstate commerce" to assume abandonment jurisdiction. Thus, under the general jurisdictional provisions of 49 U.S.C. § 10501, the STB correctly determined that it does not have jurisdiction over lines that are no longer part of the national rail system.

Petitioners argue that the Trails Act broadens the STB's jurisdiction. They point out that the Trails Act explicitly protects a number of trails that are entirely intrastate. For example, the Florida National Scenic Trail, which is entirely within Florida's borders, is expressly named in 16 U.S.C. 1244(a)(13). They also note that it is implicit in the Trails Act that the STB retain authority over intrastate segments of track because the states and municipalities that agree to railbank likely would not do so outside of their localities. The STB argues that petitioners' reliance upon the Trails Act is misplaced because the only issue is whether the STB has jurisdiction over the Leelanau Line in the context of an abandonment proceeding, and thus this case implicates the Trails Act only secondarily.

In order for us to conclude that the Trails Act affects the outcome of this case, we would necessarily have to say that the Act broadened the jurisdiction of the STB so that the STB may undertake railbanking proceedings where it would not otherwise hear an abandonment application. The relevant portion of 16 U.S.C. § 1247(d) reads: "[I]n the case of interim use of any established railroad rights-of-way ..., if such interim use is subject to restoration or reconstruction for railroad purposes, such interim use shall not be treated ... as an abandonment of the use of such rights-of-way for railroad purposes." This passage states that "interim use" shall not be treated as an abandonment, but does not state that only when there is an attempted abandonment may there be interim use. However, 49 C.F.R. § 1152.29, which sets out the administrative railbanking procedure, ties abandonment with interim use such that railbanking may be had only in conjunction with an abandonment application.

■ The STB's interpretation of the interplay between its responsibilities under the Trails Act and its jurisdiction under 49 U.S.C. § 10501 is reasonable. Although the parties cite to no case that deals specifically with a track that has fallen outside the STB's

jurisdiction because it has been severed from the national transportation system in some manner other than abandonment, once a line of track has been properly abandoned, the STB loses jurisdiction and cannot issue a trail condition. *See Becker v. STB*, 132 F.3d 60, 62–63 (D.C.Cir.1997). It is reasonable for the STB to conclude that it loses jurisdiction when a track is no longer part of the interstate rail network and may not issue a trail condition unless it determines that the "overriding interests of interstate commerce require" assumption of jurisdiction. *See Kalo Brick & Tile*, 450 U.S. at 320, 101 S.Ct. 1124. The STB's interpretation recognizes jurisdictional limits on its powers, whereas petitioners' interpretation of the Trails Act would seem to bring virtually every track in the United States within STB jurisdiction whenever an interim trail use was sought, no matter how insignificant the track to the interstate rail system.

As to petitioners' argument that the Trails Act anticipates that the STB will retain jurisdiction over intrastate segments, the Trails Act is based upon the idea that the "interim use" of the tracks "is subject to restoration or reconstruction for railroad purposes." In other words, the railbanking entities hold the railroad right-of-way in such a manner that the corridor may be returned to the interstate system in the future. Here, the Leelanau Line is not presently part of the interstate rail system. Giving due deference to the STB's interpretation of its empowering statute, we cannot say that the STB erred in its judgment that it loses jurisdiction over a line once it becomes severed from the interstate rail system so that it may not issue a trail condition.

██ Alternatively, petitioners argue that the STB erred in its judgment that the Leelanau Line was severed from the interstate rail system. They claim that RLTD has the power of eminent domain under Michigan law, so when the need arises, the connection to the interstate line may be had. However, as the STB noted in its *October Decision*, if it assumed jurisdiction on such a basis, "there could never be any single-state segments that would *not* be subject to [STB] jurisdiction, and the jurisdictional limitations" discussed above would never come into play. *October Decision* at 7, n. 22. The STB found

as a jurisdictional fact that the Leelanau Line was outside its jurisdiction, and this court must sustain this finding so long as there is "substantial evidence" to support it. *See Magner–O'Hara Scenic Ry.*, 692 F.2d at 444. Sections of the southerly end of the RLTD's line have been paved over. The stretch of track from Rennie's Station to Traverse City has long been abandoned, and no other connection from the RLTD's track to the interstate rail system exists. Substantial evidence supports the STB's determination.

██ Finally, petitioners argue that the "STB's reversal of the ICC's *October 1995 Decision* ... was arbitrary and capricious because the STB failed to identify any new relevant factors or evidence upon which it based its reversal." However, the "October 1995 Decision" was merely the "Notice of Exemption and of Interim Trail Use or Abandonment" published in the Federal Register. The ICC published this notice to advise the public that the RLTD had invoked the "out-of-service" exemption and that the abandonment authority would become effective absent timely petitions for stay or reconsideration. Under 49 C.F.R. § 1152.50(d), the STB is required to publish the notice of exemption in the Federal Register within twenty days after the railroad files its notice with the STB. The STB cannot be expected to make an informed, reasoned decision within such a short span of time. In addition, § 1152.50(d) provides for the public to submit petitions for stays of the abandonment. It would be strange to bind the STB to a "decision" that itself contemplates later proceedings challenging the noticed action. *See Illinois Commerce Comm'n v. ICC*, 848 F.2d 1246, 1259 (D.C.Cir.1988) (publication of exemption notice is not a decision). The publication in the Federal Register merely gave notice to the public as to the proceedings and was not a binding decision.

### III.

For the reasons stated, the orders of the Surface Transportation Board are **affirmed**.