# In the
# United States Court of Appeals
## For the Seventh Circuit

---

No. 02-3960

MONTEZUMA GRAIN CO., LLP, and REDEVELOPMENT COMMISSION OF PARKE COUNTY, INDIANA,

*Petitioners*,

v.

SURFACE TRANSPORTATION BOARD and UNITED STATES OF AMERICA,

*Respondents*,

and

CSX TRANSPORTATION, INC.,

*Intervening Respondent.*

---

Petition for Review of Decisions of the
Surface Transportation Board.
ICC Docket No. AB-55 (Sub-No. 486),
STB Docket No. AB-55 (Sub-No. 579X),
and STB Finance Docket No. 34019.

---

ARGUED MAY 16, 2003—DECIDED AUGUST 5, 2003

---

Before FLAUM, *Chief Judge*, and EASTERBROOK and ROVNER, *Circuit Judges*.

FLAUM, *Chief Judge*. CSX Transportation, Inc., ("CSXT") used to own and operate a 1.88-mile stretch of track near Montezuma, Indiana. After the Surface Transportation

Board[1] authorized CSXT to abandon the track, the Montezuma Grain Company ("Montezuma Grain") and the Redevelopment Commission of Parke County, Indiana, ("County") moved to reopen the abandonment proceedings. The Board denied their motion, and Montezuma Grain and the County now petition us for review. The petition is denied.

## I. BACKGROUND

This case concerns two segments of a contiguous 1.88-mile stretch of track running west from U.S. Highway 36 in Montezuma to the junction with CSXT's north-south main line in Hillsdale, Indiana. The eastern .71-mile segment ("East Segment") was part of a longer line that was authorized for abandonment in ICC Docket No. AB-55 (Sub-No. 486) ("Montezuma Abandonment"). The western 1.17-mile segment ("West Segment") was authorized to be abandoned in STB Docket No. AB-55 (Sub-No. 579X) ("Hillsdale Abandonment"). Montezuma Grain and the County have withdrawn that part of their petition seeking review of the Board's decision in STB Finance Docket No. 34019.

### A. The Montezuma Abandonment

In July 1994 CSXT filed an application under 49 U.S.C. § 10903, which authorizes abandonment or discontinuance of a railroad line if public convenience and necessity so require, seeking to abandon a 7.34-mile line that it owned and operated near Montezuma. The application accurately identified the line to be abandoned as that running west from milepost 184.07 in Bloomingdale to milepost 191.41 in

---

[1] The Surface Transportation Board's predecessor, the Interstate Commerce Commission, was abolished in 1995. We will refer to the two agencies interchangeably as "the Board."

Montezuma, which corresponds to the line's intersection point with County Road 228. In addition to the milepost designations, CSXT's application included a schematic drawing that showed the track proposed for abandonment by means of a series of "X" marks. The last "X" extended to a point just slightly west of where the line intersects U.S. Highway 36, located at milepost 190.70. County Road 228 was not identified on the drawing, nor was it identified anywhere in the application as corresponding to milepost 191.41. CSXT noted in its application that further abandonment from milepost 191.41 to milepost 192.65 in Hillsdale was anticipated within the next three years.

The County filed a comment within the 30-day protest period, taking no position with regard to the proposed Montezuma Abandonment but stating that it would be concerned if CSXT later sought to abandon the track west of milepost 191.41. Evident from the letters and petitions attached to the comment, however, is that the County was operating under the mistaken belief that milepost 191.41 corresponded to U.S. Highway 36 and not County Road 228. For instance one letter from members of the Redevelopment Commission explained that the County "was involved in a major planning effort for the development of land from the western edge of US 36 to the Wabash River, through which area CSX Rail continues to have an active line. The preservation of this active line is crucial to our planning and to our ability to attract industry." The letter later states that the members of the Commission "wish to go on record as being committed to protesting any further abandonment west of US 36 and, specifically, any future efforts to abandon the line from that point west to Hillsdale." In a similar vein, petitions signed by County residents expressed opposition to any future abandonment because it would "have a severely negative impact on county plans to develop an industrial park in the area now serviced by the rail from US 36 west to Hillsdale."

CSXT's response, dated August 3, 1994, only added to the confusion surrounding the location of the west terminus of the proposed abandonment. Noting that the County's comment raised "two separate and distinct issues"—the proposed abandonment of track between mileposts 184.07 and 191.41, and the possible future abandonment of track to the west of milepost 191.41—CSXT addressed these concerns as follows:

It is obvious that the letters and petitions attached to [the comment] also only intended to express opposition to the possible future abandonment filing by CSXT of its line of railroad between Hillsdale and Montezuma. For example, the petitions signed by interested residents of Parke County, Indiana[,] indicate that they are opposed to any abandonment that will adversely affect, or have a negative impact on county plans to develop an industrial park in the area now served by rail from U.S. 36 west to Hillsdale. *The area of concern being referred to in the petition is not included in CSXT's proposed abandonment between Montezuma and Bloomingdale which is the subject matter of this proceeding.* That area would, however, be included in any prospective abandonment filing between Montezuma and Hillsdale.

The letters from the Parke County Industrial Development Committee and from Mr. Mitchell Vogel also refer to the development of an industrial park at Montezuma and ensuring that rail service east from Hillsdale to the west side of U.S. 36 be maintained. *Once again these areas are not involved in this docket, but would be included in an abandonment filing between Montezuma and Hillsdale.*

It is therefore clear that the comments of the various letters and petitions attached . . . relate solely to retaining rail service between Hillsdale and Montezuma. They do not relate to the rail line at issue in this pro-

ceeding[,] which involves CSXT's rail line between Montezuma and Bloomingdale.

In a second comment to the Board, the County reiterated that it had no objection to the proposed Montezuma Abandonment. But once again, the comment misidentified the west end of the abandonment as corresponding to U.S. Highway 36 and not County Road 228: "[The Redevelopment Commission] continue[s] to actively support the county's effort to develop an industrial park *along the CSX line that will remain between Montezuma and U.S. 36*, and . . . appreciate[s] CSX Transportation Inc.'s apparent willingness to work with us and other county entities towards this goal." Upon receipt of this comment, the Board granted CSXT's application as unopposed, and in September 1994 CSXT filed a letter with the Board confirming consummation of abandonment.

It was not until January 1995, when CSXT began dismantling track a short distance west of U.S. Highway 36, that the County became aware of its mistake regarding the west terminus of the abandonment. It promptly sent a letter to CSXT, stating that "[t]here now appears to be a misunderstanding as to the exact location of the west end of the trackage to be abandoned." The County complained that the "X" marks appearing on the drawing attached to CSXT's application indicated "that the west end of the proposed abandonment . . . was the west end of the bridge where U.S. 36 passes under the involved rail line. This bridge is approximately one mile east of Montezuma, IN." The County also protested that CSXT had made repeated assurances (pointing specifically to its August 3, 1994, letter to the Board) that the west terminus did not extend beyond U.S. Highway 36. The County requested that CSXT drop any plans to dismantle trackage west of the highway and join it in petitioning the Board to reopen the proceedings.

CSXT responded by offering to leave the East Segment intact and sell it to the County. The County did not pursue this offer, however. Instead, six years later it and Montezuma Grain petitioned for reopening of the abandonment proceedings, arguing that the inclusion of the East Segment in the abandonment was the result of "mistake and inadvertence." The Board denied the petition on two grounds. First, it held that it lacked jurisdiction to reopen the proceedings because CSXT had already consummated the abandonment. Alternatively, the Board found that the petitioners failed to allege any procedural defects that would warrant relief. The Board acknowledged that "CSXT's 'X' marks on the map, with hindsight, should probably have extended a fraction of an inch farther to the left on the schematic drawing than they actually did." Nonetheless, the Board concluded that the drawing was insufficient to show a lack of intent to abandon the East Segment since the application itself contained an accurate description of the track by mileposts and by total mileage. The Board also acknowledged that CSXT's August 3, 1994, letter was hardly "a model of clarity" and that the letter suggested that no track west of U.S. Highway 36 would be included in the Montezuma Abandonment. But any misstatements in the letter, the Board concluded, were "not so egregious as to overcome the explicit milepost references and other evidence to the contrary."

## B. The Hillsdale Abandonment

CSXT continued to provide rail service through part of 1997 to the West Segment—the 1.17-mile of track running west from milepost 191.41 to milepost 192.58, where it intersected with CSXT's north-south main line in Hillsdale. In April 1997 demand for service on the West Segment dried up completely when Montezuma Grain, the only remaining shipper on the line, went out of business. CSXT therefore removed the crossing diamond at milepost 192.58

in order to avoid the high expenses associated with its maintenance. Restoration of service to the West Segment would require either that the crossing diamond be reinstalled or that another type of track connection be built.

Neither the County nor Montezuma Grain (or any other party) requested service on the West Segment for the next three years. Thus, in May 2000 CSXT initiated the Hillsdale Abandonment proceedings by filing a notice invoking the class exemption for out-of-service lines.[2] The County in turn filed a timely offer of financial assistance ("OFA"),[3] and the Board, finding the County to be a financially responsible party, postponed the effective date of the exemption pending the OFA negotiations.

On July 3, 2000, the County notified the Board that, pursuant to the OFA negotiations, CSXT had agreed to transfer to the County ownership of the West Segment as well as the previously abandoned East Segment. The Board accordingly issued a decision authorizing the County's acquisition of the West Segment and stating that the class exemption would be dismissed on the date of the sale. The proposed sale never occurred, however. The County withdrew its offer after CSXT determined that it could not

---

[2] A class exemption provides for abbreviated abandonment procedures in cases where no traffic has moved over the rail line for at least two years and no formal complaint seeking service is pending. *See* 49 C.F.R. 1152.50. The Board instituted the class-exemption procedures after finding that lack of use for such an extended period of time generally reflects a lack of public need for the rail line. *See generally Exemption of Out of Service Rail Line*, 2 I.C.C.2d 146 (1986).

[3] Under the OFA provisions of 49 U.S.C. § 10904, abandonment proceedings are postponed if a financially responsible party offers to subsidize or purchase the line sought to be abandoned or discontinued.

transfer the East Segment due to legal uncertainties raised by a then-pending class action suit by landowners claiming reversionary interests along the abandoned line. As an alternative to the OFA plan, CSXT suggested that the County use its power of eminent domain to condemn the East Segment, while proceeding with its OFA to acquire the West Segment. CSXT represented that it would not stand in the County's way if it pursued this course of action.

In response the County and Montezuma Grain informed CSXT that its refusal to transfer the East Segment invalidated any agreement regarding the West Segment. They asked that CSXT join them in requesting "that the Board revoke the exemption heretofore issued for abandonment of the Hillsdale-Montezuma rail line and vacate the offer-of-financial-assistance proceedings in relation to that line, on the ground that a CSXT promise that was a material inducement for Montezuma Grain Company's agreement not to oppose the abandonment and to support acquisition of the line has not been kept, negating that agreement." They also asked that CSXT immediately replace the crossing diamond at Hillsdale and that it agree to provide freight cars, rates, and rail service to Montezuma Grain. CSXT refused all these requests. It pointed out that the Hillsdale Abandonment had already been delayed for quite some time in order to allow the County to acquire the line under the OFA process but that the County "seemed unable or unwilling to progress the Line sale." CSXT also noted that the West Segment had moved no traffic for more than two years and therefore met the criteria for abandonment under the class exemption for out-of-service lines.

The County and Montezuma Grain then sought to reopen the Hillsdale Abandonment proceedings on the ground of changed circumstances—namely, CSXT's refusal to transfer the East Segment as agreed upon during the OFA negotiations. Concluding, however, that any new circumstances regarding the East Segment did not affect the material

facts warranting the class exemption for the West Segment, the Board denied reopening. The Board noted that the West Segment had moved no traffic for over two years and that the "evidence of potential traffic that petitioners have provided . . . is highly speculative, in light of the fact that Parke County has not even finalized a site for its industrial park and [Montezuma Grain] has apparently not reactivated its grain elevator." Thus, the Board concluded, even if petitioners had opposed the Hillsdale Abandonment back when CSXT filed its notice of exemption in May 2000, "the information and arguments that they have presented here would not have affected the outcome."

## II. DISCUSSION

We review the Board's denial of a motion to reopen abandonment proceedings for abuse of discretion. *City of Wausau, Wisc. v. United States*, 703 F.2d 1042, 1044 (7th Cir. 1983). We will require reopening only "in the most extraordinary circumstances" and only if petitioners have met the heavy burden of showing that the Board failed to "articulate a rational connection between the facts found and the choice made." *Id.* (quotations omitted).

As we have said, the Board's refusal to reopen the Montezuma Abandonment proceedings rested on two grounds. First, the Board concluded, relying on *Becker v. STB*, 132 F.3d 60 (D.C. Cir. 1997), and *Fritsch v. ICC*, 59 F.3d 248 (D.C. Cir. 1995), that it lacked jurisdiction to reopen because CSXT had already consummated the abandonment. As a general matter, it is true that the Board's regulatory jurisdiction over a rail line terminates once the line has been completely abandoned. *Preseault v. ICC*, 494 U.S. 1, 5 n.3 (1990) ("Once a carrier 'abandons' a rail line pursuant to authority granted by the [Board], the line is no longer part of the national transportation system, and although the [Board] is empowered to impose conditions on abandon-

ments . . . as a general proposition [its] jurisdiction termi-
nates."); *Hayfield Northern R.R. Co., Inc. v. Chicago and
North Western Transp. Co.*, 467 U.S. 622, 633 (1984)
("[U]nless the [Board] attaches postabandonment conditions
to a certificate of abandonment, the [Board's] authorization
of an abandonment brings its regulatory mission to an
end."). So for instance, after consummation of abandon-
ment, the Board is without jurisdiction to reopen the
proceedings in order to convert the abandoned right-of-way
to trail use under the National Trail System Act, 16 U.S.C.
§ 1241 *et seq. See Becker*, 132 F.3d at 63; *Fritsch*, 59 F.3d at
253. That proposition of law is well established. This case,
however, does not involve a request to impose a trail-use
condition or to otherwise order the resumption of service on
an abandoned line, but poses a different type of question
altogether—whether the abandonment certificate was
rightfully issued in the first instance. As provided by 49
U.S.C. § 722(c)(1), the Board "may, *at any time on its own
initiative* because of material error, new evidence, or sub-
stantially changed circumstances . . . reopen a proceeding."
We noted in *Busboom Grain Co., Inc. v. ICC*, 830 F.2d 74,
76 (7th Cir. 1987), that *Hayfield* and its related cases
assumed that the rail line had been abandoned lawfully.
But in cases where it was not, the Board might still retain
jurisdiction to revoke the abandonment; for example, "[i]f
the Commission's Secretary forged the Commissioners'
signatures to a document authorizing abandonment, the
railroad's cessation of service would not prevent the Com-
mission from vacating the order and completing the regular
administrative process." *Id.*

We flag this issue without resolving it, *see Consolidated
Rail Corp. v. STB*, 93 F.3d 793, 799-800 (D.C. Cir. 1996); for
even if the Board had jurisdiction to entertain the motion to
reopen, it did not abuse its discretion in concluding that
petitioners were not entitled to relief. Petitioners have
made no allegation that CSXT committed fraud during the

abandonment proceedings (and we express no opinion whether the outcome would be different if they had, *see generally Illinois Central Gulf R.R. Co.— Abandonment—In DeWitt & Piatt Counties, IL*, 1988 WL 225594, at *6 (I.C.C. Dec. 19, 1988)). Instead, petitioners claim mutual mistake and contend that they were misled, both by the schematic drawing attached to CSXT's application and by its August 3, 1994, letter to the Board, as to the precise location of the western end of the proposed abandonment. But as the Board found, the application itself accurately set forth the milepost and mileage description of the line segment sought to be abandoned. The Federal Register Notice also accurately described the line segment by beginning and ending mileposts and total mileage. The Board therefore reasonably concluded that petitioners had adequate notice of the proposed abandonment since any misrepresentations in CSXT's drawing and letter were "not so egregious as to overcome the explicit milepost references and other evidence to the contrary." If petitioners were unsure as to the location of the west terminus, they could have conducted their own investigation, and they admit that they did not do so. Given this and the fact that petitioners had written notice of the exact milepost designations, we conclude that the Board did not abuse its discretion in refusing to reopen the proceedings, especially since petitioners waited six years before asking for such relief. *See City of Wausau*, 703 F.2d at 1044-45.

Turning next to the Hillsdale Abandonment: Petitioners argue that CSXT's withdrawal of its offer to sell the East Segment to the County is a substantial change in circumstances warranting reopening of the proceedings. The Board disagreed with their position, holding that the changed circumstances regarding the East Segment did not materially affect the case relating to the West Segment. This was not an abuse of discretion. In order to reopen an administratively final action, petitioners had to show that

the alleged new circumstances warranted a different re-
sult, *SWKR Operating Co.—Abandonment Exemption—In
Cochise County, AZ*, 1998 WL 398187, at *1 (I.C.C. June 26,
1998), and they failed to meet their burden. In class-ex-
emption cases it is presumed that abandonment is permissi-
ble because lack of use of a rail line for over two years
generally reflects a lack of public need for rail service. *See
Exemption of Out of Service Rail Line*, *supra*. Here, there is
no dispute that, at the time CSXT filed its notice of class
exemption, the West Segment had not moved traffic for over
two years. Further, mere speculation about future traffic is
not enough to revoke a class exemption, *CSX Transp.,
Inc.—Abandonment Exemption—In Bell County, KY, and
Claiborne County, TN*, 1994 WL 407025, at *2 (I.C.C. July
27, 1994), and the Board reasonably found in this case that
petitioners' evidence of future traffic was "highly specula-
tive, in light of the fact that Parke County [had] not even
finalized a site for its industrial park and [Montezuma
Grain had] apparently not reactivated its grain elevator."

Even on appeal, petitioners give no reason why the
underlying criteria for the class exemption have not been
met. Instead, they claim that the Board committed a pro-
cedural error by characterizing their petition to reopen as
one seeking to revoke the class exemption. Under the
proper characterization, petitioners argue, they had no
obligation whatsoever to show that the new circumstances
were likely to have a material substantive effect on the
abandonment action. This is simply incorrect. Whether they
were moving to reopen the proceedings or to revoke the
class exemption, petitioners had to show in either case that
the alleged new circumstances warranted a different
outcome. *SWKR Operating*, 1998 WL 398187, at *1. Under
this standard the Board was correct to conclude that
petitioners' claim "that they would have opposed the aban-
donment if they knew then what they know now" was
insufficient to obtain relief. The unraveling of the agree-

ment regarding the East Segment had no effect at all on whether the West Segment could be lawfully abandoned. It would make no sense for the Board to reopen the abandonment proceedings if the petitioners have no claim that would mandate a different result.


### III. CONCLUSION

The Board's decision was well reasoned and rationally connected to the facts. The petition for review is therefore DENIED.


A true Copy:

     Teste:


_____
*Clerk of the United States Court of*
*Appeals for the Seventh Circuit*